IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

NOAH I.M. SCHENK,                ) CIV. NO. 22-00483 HG-WRP
                                 )
            Plaintiff,           )
                                 )
        vs.                      )
                                 )
HAWAIIAN AIRLINES, INC.;         )
HAWAIIAN HOLDINGS, INC.,         )
                                 )
                                 )
            Defendants.          )
                                 )
                                 )
                                 )
                                 )
_____)

**ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION (ECF No. 82)**

**AND**

**DECLINING SUPPLEMENTAL JURISDICTION OVER REMAINING STATE LAW CAUSE OF ACTION**

**AND**

**DISMISSING THE CASE**

Plaintiff Noah I.M. Schenk was formerly employed as a flight attendant with Defendant Hawaiian Airlines, Inc.

In August 2021, Defendant Hawaiian Airlines, Inc. and its parent company, Defendant Hawaiian Holdings, Inc. ("Hawaiian Defendants") implemented a mandatory vaccination policy in the midst of the worldwide COVID-19 pandemic.

1

Plaintiff Schenk requested to be exempt from the COVID-19 vaccination policy based on unidentified religious beliefs.

The Hawaiian Defendants denied Plaintiff's request for exemption from their vaccination policy.

Plaintiff filed suit against the Hawaiian Defendants asserting:

**Count I:**  Failure-to-Accommodate his religious beliefs pursuant to Title VII of the Civil Rights Act of 1964 and Hawaii Revised Statutes § 378-2; and

**Count II:** Gross Negligence.

The Hawaiian Defendants argue that the Court lacks subject-matter jurisdiction to review Plaintiff's failure-to-accommodate claims in Count I.

The Hawaiian Defendants assert that Plaintiff's failure-to-accommodate claims require interpretation of the existing Collective Bargaining Agreement that applied to Plaintiff as a flight attendant.  The Hawaiian Defendants argue that the Court may not review such claims pursuant to the jurisdictional limitations set forth in the Railway Labor Act, 45 U.S.C. §§ 181-188 ("RLA").  The RLA requires claims that involve interpretation of collective bargaining agreements for transportation workers to be resolved only through the RLA's internal dispute-resolution processes.  See 45 U.S.C. § 184.

Defendants' Motion for Partial Dismissal for Lack of

Subject-Matter Jurisdiction (ECF No. 82) is **GRANTED.**

Count I in the First Amended Complaint (ECF No. 30) is **DISMISSED WITH PREJUDICE.**

The Court lacks original subject-matter jurisdiction over the First Amended Complaint.

The Court declines to exercise supplemental jurisdiction over the remaining state law claim in Count II.

Count II in the First Amended Complaint (ECF No. 30) is **DISMISSED.**

## PROCEDURAL HISTORY

On November 10, 2022, Plaintiff filed the Complaint.  (ECF No. 1).

On February 21, 2023, the case was reassigned from Judge Susan Oki Mollway to Judge Helen Gillmor.  (ECF No. 15).

On June 16, 2023, Plaintiff filed the First Amended Complaint.  (ECF No. 30).

On March 31, 2025, Defendants submitted a letter to the Court, after conferring with Plaintiff's counsel, requesting leave to file a Motion to Dismiss pursuant to the Railway Labor Act, which was granted.  (ECF Nos. 79, 80).

On April 16, 2025, Defendants filed their Motion for Partial Dismissal for Lack of Jurisdiction Pursuant to the Railway Labor Act.  (ECF No. 82).

On April 30, 2025, Plaintiff filed his Opposition.  (ECF No. 87).

On May 1, 2025, Plaintiff filed an Errata.  (ECF No. 88).

The Court elects to decide the Motion without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## BACKGROUND

Plaintiff Noah I.M. Schenk alleges in the First Amended Complaint that he was a flight attendant employed by Defendant Hawaiian Airlines, Inc., since April 2, 2018, and was based out of Honolulu, Hawaii.  (First Amended Complaint at ¶ 30, ECF No. 30).

## Plaintiff's Collective Bargaining Agreement

Plaintiff Schenk was subject to a Collective Bargaining Agreement entitled, "Agreement Between Hawaiian Airlines, Inc. and the Flight Attendants in the Service of Hawaiian Airlines, Inc. as Represented by the Association of Flight Attendants-CWA." (Declaration of Justin Doane, Vice President of Labor Relations for Hawaiian Airlines, Inc., at ¶¶ 3-7, ("Doane Decl."), ECF No. 82-2; Collective Bargaining Agreement attached as Ex. 1 to Def.'s Motion, ECF No. 82-10).  The Collective Bargaining Agreement is commonly referred to as the "CBA."  It was in effect from April 3, 2020 through April 2, 2025.  (Id.)

4

The Collective Bargaining Agreement governed the working relationship between flight attendants, including Plaintiff, and the Hawaiian Defendants.  (Doane Decl. at ¶ 8, ECF No. 82-2).  The CBA sets forth the terms and conditions of the flight attendants' employment.  (Id.)  The CBA provides detailed rules governing the performance of flight attendant duties including scheduling, route assignments, seniority, benefits, and retirement.  (Id. at ¶ 11).

The seniority and bidding provisions of the CBA cover all Hawaiian flight attendants' work assignment routes, schedules (including locations, dates, duration, and layovers), and aircraft types.  (Id. at ¶ 9; CBA at Section 8 on "Reserves," Section 9 on "Seniority," Section 10 on "Preparation, Bidding and Awarding of Flight Schedules Under PBS," and Section 11 on "Scheduling Policy," attached as Ex. 1 to Def.'s Motion, ECF No. 82-10).

Seniority and bidding procedures also affect work conditions, tasks, pay rates, and compensation.  (CBA at Section 3 on "Compensation," and Section 7 on "Hours of Service," attached as Ex. 1 to Def.'s Motion, ECF No. 82-10).

The Collective Bargaining Agreement contains a provision mandating that any disputes concerning interpretation or application of any of the terms of the CBA be resolved through arbitration by the System Board of Adjustment whose decision is

final and binding on the parties as provided by the Railway Labor Act, 45 U.S.C. § 151 et seq. (CBA at 1-15, attached as Ex. 1 to Def.'s Motion, ECF No. 82-10; Doane Decl. at ¶ 17, ECF No. 82-2).

**The Hawaiian Defendants' Vaccination Policy**

According to the First Amended Complaint, in August 2021, in the midst of the worldwide COVID-19 pandemic, Defendants Hawaiian Airlines, Inc. and its parent company Hawaiian Holdings, Inc. ("Hawaiian Defendants") announced a vaccination policy. (First Amended Complaint at ¶ 20, ECF No. 30). Plaintiff alleges that the Hawaiian Defendants required all of their employees to receive a COVID-19 vaccine or receive approval of exemptions for religious or medical reasons. (Id. at ¶¶ 20, 27-29). The First Amended Complaint asserts that the Hawaiian Defendants permitted unvaccinated employees to work under a Transition Period Testing Program from November 1, 2021 until January 4, 2022. (Id. at ¶ 20).

Plaintiff claims that after January 4, 2022, unvaccinated employees were offered 12 months of leave without pay when the Hawaiian Defendants ended the testing program as an accommodation. (Id. at ¶¶ 20, 22-23, 28-29).

**Plaintiff's Religious Accommodations Request For Exemption From The Vaccination Policy**

Plaintiff alleges that on September 25, 2021, he submitted a

request for exemption from the Hawaiian Defendants' vaccination policy based on religious beliefs. (Id. at ¶ 31). Plaintiff does not identify his religious beliefs in the First Amended Complaint or the basis for the conflict.

The First Amended Complaint alleges that on October 14, 2021, the Hawaiian Defendants denied Plaintiff's request for religious exemption from the vaccine policy. (Id. at ¶ 32).

According to the First Amended Complaint, on November 22, 2021, the Hawaiian Defendants terminated Plaintiff's employment. (Id. at ¶ 33).

**Plaintiff's Causes of Action**

On June 16, 2023, Plaintiff filed the First Amended Complaint, asserting the following causes of action:

**COUNT I:**  Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **Failure-To-Accommodate**

and

Violation of Hawaii Revised Statutes § 378-2, for **Religious Discrimination** Based on **Failure-To-Accommodate**

**COUNT II:** Gross Negligence.

**The Hawaiian Defendants' Motion to Dismiss Pursuant To the Railway Labor Act**

The Hawaiian Defendants have filed a Motion for Partial

Dismissal of Count I for lack of subject-matter jurisdiction.

The Hawaiian Defendants' Motion argues that the Court lacks subject-matter jurisdiction to review Plaintiff's failure-to-accommodate causes of action because such claims are precluded from court review pursuant to the Railroad Labor Act, 45 U.S.C. § 151, <u>et</u> <u>seq.</u>

## **STANDARD OF REVIEW**

A plaintiff has the burden of proving that subject-matter jurisdiction exists. <u>Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979). The Court must dismiss any claims for which it lacks subject-matter jurisdiction. <u>See</u> Fed. R. Civ. P. 12(b)(1); <u>Leeson v. Transamerica Disability Income Plan</u>, 671 F.3d 969, 975 (9th Cir. 2012).

A challenge to the Court's subject-matter jurisdiction may be "facial or factual." <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the party challenging jurisdiction argues that the allegations contained in a complaint are insufficient "on their face" to invoke federal jurisdiction. <u>Id.</u> A facial challenge therefore mirrors a traditional motion to dismiss analysis. The Court must take all allegations contained in the pleading "to be true and draw all reasonable inferences in [its] favor." <u>Wolfe v. Strankman</u>, 392

8

F.3d 358, 362 (9th Cir. 2004).

In a factual attack, the party challenging jurisdiction argues that the facts in the case, notwithstanding the allegations in the Complaint, divest the Court of subject-matter jurisdiction.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  No presumptive truthfulness attaches to the Complaint's allegations.  Id.  The party challenging jurisdiction presents "affidavits or other evidence properly brought before the court" indicating that subject-matter jurisdiction is lacking.  Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  The burden then shifts to "the party opposing the motion [to] furnish affidavits or other evidence to satisfy its burden of establishing subject matter jurisdiction."  Id.  Failure to present suitable evidence establishing subject-matter jurisdiction necessitates dismissal.  Moore v. Maricopa Cnty. Sheriff's Office, 657 F.3d 890, 895 (9th Cir. 2011).

A motion challenging the district court's jurisdiction pursuant to the Railway Labor Act is properly considered as a motion bringing a factual attack on subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Soper v. United Airlines, Inc., 2024 WL 4800082, *2 (C.D. Cal. Sept. 4, 2024).

The Court may review the Collective Bargaining Agreement and other relevant evidence to determine whether it has subject-matter jurisdiction pursuant to the Railway Labor Act.  Hinant v.

9

American Airlines, Inc., 2024 WL 4988391, *3 (D. Ariz. Dec. 5, 2024).

## ANALYSIS

## I.    Defendants' Motion To Dismiss For Lack Of Subject-Matter Jurisdiction Is Timely

As an initial matter, Plaintiff argues that Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction pursuant to the Railway Labor Act is "non-jurisdictional" and that it "can be waived."  (Pl.'s Opp. at p. 9, ECF No. 87).

The nature of subject-matter jurisdiction is set forth by the United States Supreme Court in Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).  Defenses based on lack of subject-matter jurisdiction can be raised at any time, including after trial and on appeal, and can never be waived or forfeited by the parties. Id.

The Court is obligated to consider motions to dismiss for lack of subject-matter jurisdiction, including motions based on preclusion or preemption pursuant to the Railway Labor Act, whenever the issue is raised.  Pearson v. Northwest Airlines, Inc., 659 F.Supp.2d 1084, 1088 n.3 (C.D. Cal. 2009).  Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).

Plaintiff's argument that lack of subject-matter

10

jurisdiction can be waived by the Parties is wholly without merit.

## II.  **The Railway Labor Act**

The Railway Labor Act ("RLA"), 45 U.S.C. § 151, <u>et</u> <u>seq.</u>, was enacted to provide a comprehensive framework for resolving labor disputes involving transportation carriers.

In 1936, the Railway Labor Act was extended to cover the airline industry.  <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 248 (1994); <u>see</u> 45 U.S.C. § 181.

The RLA addresses three kinds of labor disputes:

(1)  major disputes;

(2)  minor disputes; and

(3)  representation disputes.

<u>Haralson v. United Airlines, Inc.</u>, 224 F.Supp.3d 928, 934 (N.D. Cal. 2016).

<u>First</u>, "major disputes" relate to the formation of collective bargaining agreements or the efforts of the parties to secure rights under the collective bargaining process.  <u>Consol. Rail Corp. v. Ry. Labor Executives' Ass'n</u>, 491 U.S. 299, 302 (1989).  Major disputes look to the acquisition of rights for the future, and they do not involve disputes about rights that were vested in the past.  <u>Id.</u>  Major disputes require the parties to undergo lengthy bargaining, mediation, and arbitration processes.

Id.

Second, "minor disputes" seek to enforce existing
contractual rights as embodied in an existing collective
bargaining agreement.  Aircraft Serv. Int'l, Inc. v. Int'l Bhd.
of Teamsters, 779 F.3d 1069, 1081 (9th Cir. 2015) (en banc).
Minor disputes require the existence of a collective bargaining
agreement already in effect and involve "controversies over the
meaning of an existing collective bargaining agreement in a
particular fact situation."  Elgin, J. & E. Ry. Co. v. Burley,
325 U.S. 711, 723 (1945).

The RLA mandates that minor disputes are subject to an
exclusive dispute resolution mechanism for the prompt and orderly
settlement of such claims.  Norris, 512 U.S. at 252.

A distinguishing feature of a minor dispute from a major
dispute is that a minor dispute requires interpretation of an
existing collective bargaining agreement whereas a major dispute
challenges an attempt to form or secure collective bargaining
rights.  Id. at 265.  Courts lack subject-matter jurisdiction to
adjudicate minor disputes concerning an existing collective
bargaining agreement.  Id.

Third, the RLA also covers "representation disputes" which
concern the definition of a particular bargaining unit and
selection of the employee representative for collective
bargaining.  Herrera v. Command Sec. Corp., 837 F.3d 979, 989

12

(9th Cir. 2016).  Representation disputes are within the
exclusive jurisdiction of the National Mediation Board and courts
also lack jurisdiction over such claims.  Id.

## III. Courts Lack Subject-Matter Jurisdiction To Review Minor Disputes Pursuant To The Railway Labor Act

Minor disputes between an employee and a transportation
carrier must be resolved through the RLA's non-judicial,
procedural mechanisms rather than through a lawsuit.  See 45
U.S.C. § 184.  Courts lack subject-matter jurisdiction over minor
disputes within the meaning of the RLA.  Norris, 512 U.S. at 253.

### A.    Two-Step Test For Preclusion Of Minor Disputes

Courts in the Ninth Circuit apply a two-step test to
evaluate if a plaintiff's claim is preempted or precluded from
court review by the RLA.  Columbia Exp. Terminal, LLC v. Int'l
Longshore & Warehouse Union, 23 F.4th 836, 841-42 (9th Cir.
2022).

First, the court examines if the plaintiff's claim seeks
purely to vindicate a right or duty created by the collective
bargaining agreement itself.  Id. at 843.  If so, the claim is
preempted or precluded from review.  If not, the court proceeds
to the second step.

Second, even if the claim does not seek to vindicate a right
created by the CBA, the court evaluates if the plaintiff's claim

13

is substantially dependant on analysis and interpretation of the
CBA.  Id.  If so, the claim is preempted or precluded from
review.

### B.    Plaintiff's Claims That Require Interpretation Of An Existing Collective Bargaining Agreement Are Preempted Or Precluded From Court Review Under The RLA

Under step two, a court is without subject-matter
jurisdiction to review a plaintiff's claim that concerns
interpretation of the "duties and rights created or defined by
the collective bargaining agreement." Alaska Airlines, Inc. v.
Schurke, 898 F.3d 904, 919 (9th Cir. 2018) (en banc) (quoting
Norris, 512 U.S. at 258).  Such disputes must be resolved only
through the RLA mechanisms, and not by a court.  Id.

The RLA exclusivity provision was enacted to ensure that
disputes regarding existing collective bargaining agreements are
governed by a uniform set of principles rather than conflicting
substantive interpretations under competing legal systems in the
federal and state courts.  Schurke, 898 F.3d at 919.

### C.    Disputes That Do Not Require Interpretation Of the Existing Collective Bargaining Agreement Are Not Preempted Or Precluded From Court Review

Consultation of the collective bargaining agreement alone is
insufficient to trigger application of the RLA.  Livadas v.
Bradshaw, 512 U.S. 107, 124 (1994).  In order to qualify as a

14

minor dispute pursuant to the RLA, the dispute must require interpretation of the terms of a collective bargaining agreement. Norris, 512 U.S. at 265.

The court is not divested of jurisdiction pursuant to the RLA if there is no disagreement as to the meaning of all of the terms of the collective bargaining agreement.  Schurke, 898 F.3d at 927.  "Reliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment."  Id.

For example, a claim for damages dependent on a CBA's undisputed wage provisions are not preempted by the RLA because the claim is not dependent on interpretation of a CBA term. Livadas, 512 U.S. at 125.

## IV.  Plaintiff's Failure-To-Accommodate Claims Require Interpretation Of The Existing Collective Bargaining Agreement

The Hawaiian Defendants assert that Plaintiff's failure-to-accommodate claim pursuant to Title VII of the Civil Rights Act is precluded from review because it is a "minor dispute" about the terms of the existing collective bargaining agreement. Similarly, the Hawaiian Defendants assert that Plaintiff's failure-to-accommodate claim pursuant to Hawaii state law under

Haw. Rev. Stat. § 378-2 is preempted by the RLA.[1]

The Hawaiian Defendants argue that Plaintiff's claims regarding the availability of accommodations from the vaccine policy require interpretation of various provisions of the existing CBA.

**A.   Plaintiff's Requested Accommodation Requires Interpretation Of The Seniority, Bidding, And Assignment Provisions Of The Collective Bargaining Agreement**

The United States Supreme Court ruled in <u>Trans World Airlines, Inc. v. Hardison</u>, 432 U.S. 63, 67 (1977), that it was an undue hardship to force an employer to violate an existing collective bargaining agreement in order to provide an employee with her requested accommodation.  See <u>Groff v. DeJoy</u>, 600 U.S. 447, 470 (2023) (clarifying that undue hardship requires more than de minimis cost); 29 C.F.R. § 1605.2(e)(2) (stating that in addition to cost, "Undue hardship would also be shown where a variance from a bona fide seniority system is necessary in order to accommodate an employee's religious practices when doing so would deny another employee his or her job or shift preference

---

[1] Failure-to-accommodate claims on the basis of religion utilize the same standard and framework pursuant to both federal law under Title VII and Hawaii state law under Haw. Rev. Stat. § 378-2.  <u>Cruz v. Kaiser Foundation Hospitals</u>,   F.Supp.3d  , 2025 WL 951099, *3-*4 (D. Haw. Mar. 28, 2025); <u>see</u> <u>Victorino v. Hawaiian Airlines, Inc.</u>, 2024 WL 5108276, *5 (D. Haw. Dec. 12, 2024).

guaranteed by that system").

The Hawaiian Defendants assert that granting Plaintiff's requested accommodation to fly unvaccinated or to fly only on specific routes would have forced it to violate the CBA's terms, including its seniority system.  The Hawaiian Defendants cite numerous provisions of the Collective Bargaining Agreement in support of their position that Plaintiff's accommodation request requires interpretation of the existing Collective Bargaining Agreement.  The Hawaiian Defendants argue that accommodating Plaintiff would have substantially disrupted not only its business operations but would have violated numerous terms of the existing CBA, including its seniority provisions, process bidding for routes, and scheduling of flight attendants.  See Hardison, 432 U.S. at 79; 29 C.F.R. § 1605.2(e)(2).

In 2021, Plaintiff Schenk was a reserve flight attendant who flew international routes for Defendants.  (Deposition of Noah I.M. Schenk at pp. 28-30, 39, ("Schenk Depo.") attached as Ex. 4 to Def.'s Motion, ECF No. 82-13).  Plaintiff testified in his deposition that he had flown international routes to Japan, Australia, and New Zealand.  (Id. at p. 39).

A reserve flight attendant is not awarded a particular route but is available to be assigned to fly anywhere including in the International Operation.  (Id. at pp. 30, 39; Doane Decl. at ¶ 15-16, 19-23, ECF No. 82-2).

The Hawaiian Defendants assert that, according to their interpretation of the CBA, the assignment of flights to a reserve flight attendant is done in seniority order, taking into consideration flight attendant preferences.  (Id. at ¶ 16).

The Hawaiian Defendants assert that allowing Plaintiff to fly unvaccinated, as Plaintiff requested, would have conflicted with the seniority-based bidding process governing international routes for reserve flight attendants set forth in the CBA.  (CBA at Section 9B-3 at p. 9-1, attached as Ex. 1 to Def.'s Motion, ECF No. 82-10; Doane Decl. at ¶¶ 20-23, ECF No. 82-2).  The Hawaiian Defendants point to the various provisions of the CBA governing seniority and route bidding in support of their position.  (CBA at Section 8 on "Reserves," Section 9 on "Seniority," Section 10 on "Preparation, Bidding and Awarding of Flight Schedules Under PBS," and Section 11 on "Scheduling Policy," see also Section 3 on "Compensation," and Section 7 on "Hours of Service," attached as Ex. 1 to Def.'s Motion, ECF No. 82-10).

The Hawaiian Defendants argue that complications in assignments arose on the route from Honolulu to Sydney, Australia, during the COVID-19 pandemic.  The Australian Government in New South Wales, where Sydney is located, implemented restrictions for unvaccinated flight crew arriving in the jurisdiction.  (See Public Health (COVID-19 Air

18

Transportation Quarantine) Order (No 4) 2021, issued by the New
South Wales Government, attached as Ex. 11 to the Declaration of
Kathleen Mainerd, Senior Manager, South Pacific, Airport
Operations for Defendant Hawaiian Airlines, Inc., ECF No. 82-20).

    The Australian restrictions included fines for employers
whose employees failed to follow protocols.  (Id.; Declaration of
Jon Baron, Director, In-Flight Policies, Procedures & Compliance
for Defendant Hawaiian Airlines, Inc., at ¶¶ 3-4, attached to
Def.'s Motion, ECF No. 82-6).

    The Hawaiian Defendants assert that they elected to place
only vaccinated flight attendants on the route from Honolulu to
Sydney to avoid penalties and/or fines to unvaccinated employees
for violating the Australian regulations.  (Mainerd Declaration
at ¶¶ 3-5, attached to Def.'s Motion, ECF No. 82-5).

    The Hawaiian Defendants explain that because Plaintiff was a
reserve flight attendant who flew international routes, including
to Sydney, Australia, accommodating Plaintiff's request would
have displaced the bids of other Hawaiian flight attendants and
impinged on their seniority rights in violation of the terms of
the CBA.

    Plaintiff disagrees with the Defendants' interpretation of
the terms of the CBA.  Plaintiff relies on his own interpretation
of the terms of the CBA to argue that granting his accommodation
request and his schedule preferences would not have violated the

CBA terms.

The question of whether Plaintiff's requested accommodation
would have been permitted by the CBA is the exact type of dispute
that the Court lacks subject-matter jurisdiction to review.  The
dispute about whether the CBA would have allowed the Hawaiian
Defendants to schedule unvaccinated flight attendants on the
route to Sydney where the employees could have been subject to
legal consequences and/or fines imposed by the Australian
government is also unclear.

There is also a question pursuant to the terms of the CBA if
the Hawaiian Defendants could have granted an accommodation to
Plaintiff alone or whether they would have been required to
provide the same accommodation to the other 268 flight attendants
who requested exemption from the vaccine policy.  (Declaration of
Willard Jackson, Senior Director, Leave Management for Defendant
Hawaiian Airlines, Inc. at ¶ 10, attached to Def.'s Motion, ECF
No. 82-3).  The disputed questions concerning seniority and the
bidding process for other flight attendants are central to
Plaintiff's failure-to-accommodate claims.  The disputed question
of whether the CBA would have required the Hawaiian Defendants to
provide identical accommodations to all 268 flight attendants
requesting exemption is inextricably intertwined with the
Hawaiian Defendants' undue hardship defense.  These crucial
questions hinge on interpretation of the CBA's terms and must be

decided by an arbitrator.

Disagreements about the interpretation, scope, or applicability of specific terms of an existing CBA are the types of disputes subject to preclusion and preemption pursuant to the RLA. Hinant, 2024 WL 4988391, at *3 (citing Int'l Ass'n of Sheet Metal Air, Rail, & Transp. Workers v. Union Pac. R.R. Co., 2019 WL 6499212 *10 (C.D. Cal. July 25, 2019); Pritchard v. American Airlines, Inc., 708 F.Supp.3d 861, 867 (N.D. Tex. 2023)).

These disputes about the CBA are necessary to resolve Plaintiff's failure-to-accommodate claims because they directly impact the evaluation of the reasonable accommodations available and the undue hardship defense. Hardison, 432 U.S. at 79; 29 C.F.R. § 1605.2(e)(2).

**B.   Plaintiff's Claims Are Distinguishable From Intentional Discrimination Causes Of Action**

Plaintiff primarily relies on cases that have ruled that intentional discrimination causes of action are generally not precluded or preempted by the RLA. (Pl.'s Opp. at pp. 10-16, ECF No. 87).

In Felt v. Atchison, Topeka & Santa Fe Ry. Co., 60 F.3d 1416, 1420 (9th Cir. 1995), as a matter of first impression, the Ninth Circuit Court of Appeals ruled that Title VII religious discrimination claims are generally not precluded by the RLA because these types of claims exist entirely independent of the

21

collective bargaining agreement and usually do not require
interpretation of CBA terms.  See also Saridakis v. United
Airlines, 166 F.3d 1272, 1277 (9th Cir. 1999) (finding federal
disability discrimination claim did not require interpretation of
CBA).

Here, Plaintiff's causes of action in Count I, however, are
not intentional discrimination claims.  Rather, Count I is
premised on Plaintiff's argument that he believes the Defendants
could have provided him with his requested accommodation within
the confines of the existing Collective Bargaining Agreement.
Plaintiff alleges that the Defendants denied his requested
accommodation and instead offered the accommodation of leave
without pay, which he claims was insufficient.  (First Amended
Complaint at ¶¶ 28, 32-33, 43-47, ECF No. 30).  Plaintiff claims
that he elected to be terminated in lieu of the accommodation
proposed by the Defendants.  (Id. at ¶¶ 22-24, 28, 32).

Plaintiff has not asserted any direct or intentional
discrimination claim, but instead has brought failure-to-
accommodate claims where he has placed the interpretation of
multiple provisions of the Collective Bargaining Agreement in
dispute.  See Sjoberg v. United Airlines, Inc., 2024 WL 4219736,
at *4 (S.D. Tex. Sept. 17, 2024) (quoting Pavlova v. United
Airlines, Inc., 2024 WL 1514962, at *3 (S.D. Tex. Mar. 5, 2024),
holding that the RLA bars court review of discrimination claims

where "Plaintiff puts interpretations of provisions of the [collective bargaining agreement] at the center of this dispute").

The same analysis applies to Plaintiff's Hawaii state law failure-to-accommodate claim under Haw. Rev. Stat. § 378-2, which is legally indistinguishable from his Title VII failure-to-accommodate claim.  Victorino, 2024 WL 5108276, at *3. Plaintiff's Haw. Rev. Stat. § 378-2 failure-to-accommodate claim also requires interpretation of the terms of the existing CBA. Contra Norris, 512 U.S. at 264-66 (holding that state law claims that are independent of the collective bargaining agreement and do not involve interpretation of the CBA's terms are not preempted by the RLA).  Plaintiff's state law claim is preempted pursuant to the RLA because it requires interpretation and application of disputed terms in the CBA.  Edelman v. Western Airlines, Inc., 892 F.2d 839, 845 (9th Cir. 1989) (finding state law claims were preempted by the RLA because they were "inextricably intertwined" with the interpretation of the CBA); Alvarez v. Transitamerica Services, Inc., 2019 WL 144592, *4-*6 (N.D. Cal. Jan. 9, 2019).

The questions here concerning the availability of the Plaintiff's requested accommodations based on disputed interpretations of the seniority, bidding, reserves, and scheduling provisions distinguish Plaintiff's causes of action

23

from <u>Felt</u> and <u>Norris</u>.

### C.   Plaintiff's Failure-To-Accommodate Claims Require More Than Mere Reference To The Terms Of The Collective Bargaining Agreement

Courts have ruled that a plaintiff's claim is not precluded or preempted by the RLA when the court need simply review a term in a CBA or read the provisions of the CBA to determine its basic provisions.  <u>Burnside v. Kiewit Pac. Corp.</u>, 491 F.3d 1053, 1060 (9th Cir. 2007); <u>Angeles v. U.S. Airways, Inc.</u>, 2013 WL 622032, *6 (N.D. Cal. Feb. 19, 2013); <u>but see</u> <u>McKinley v. Southwest Airlines Co.</u>, 680 Fed. Appx. 522, 524-25 (9th Cir. 2017) (finding rate of overtime pay required interpretation of the CBA because plaintiff disputed the amount due under the terms of the CBA).

Here, Plaintiff's claims do not merely require the Court to look to the CBA or reference its terms.  Instead, Plaintiff's failure-to-accommodate claims require interpretation of the complex collective bargaining agreement and various provisions governing scheduling, bidding, and seniority for flight attendants.  Plaintiff's failure-to-accommodate claims are "inextricably intertwined" with the CBA's terms.  <u>Edelman</u>, 892 F.2d at 845.

Plaintiff's interpretation of the CBA relies on his own beliefs as to available accommodations based on past practice, usage, and custom of the parties regarding the CBA.

24

In <u>Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n</u>, 491
U.S. 299, 311 (1989), the United States Supreme Court ruled that
interpretation of collective bargaining agreements often depends
on practice, usage, and custom.  Interpretation of CBA terms
based on practice, usage, and custom is one of the primary
reasons that the RLA dictates that CBA interpretation must be
before a specialized arbitrator and not the court system.

The United States Supreme Court ruled that these types of
disputes cannot be reviewed by the courts because the RLA
precludes review over claims where the parties disagree about the
effect of past practices on the interpretation of CBA terms.
<u>Consol. Rail Corp.</u> 49 U.S. at 320 (holding that the court lacked
jurisdiction to review the employees' claims because there were
disputes about the effect of the employer's past practices
regarding drug testing and whether its drug testing practices
were justified under the terms of the CBA).

Just as here, the RLA precludes review of Plaintiff's
failure-to-accommodate claims given the disputes regarding the
effect that past practice, usage, and custom may have on the
terms of the existing CBA.  <u>Id.</u>; <u>see also</u> <u>Hinant</u>, 2024 WL
4988391, at *3; <u>Flanary v. USAIR, Inc.</u>, 1997 WL 364090, *3 (S.D.
Cal. Mar. 27, 1997) (finding the flight attendant's claim was
preempted under the RLA because of questions about the effect of
practice, custom, and usage on the existing collective bargaining

agreement, even though no specific section of the CBA directly addressed plaintiff's claim).

### D. Plaintiff's Failure-To-Accommodate Claims In The Context Of The COVID-19 Pandemic

The Sixth Circuit Court of Appeals recently ruled, on very similar facts, that a group of pilots' failure-to-accommodate discrimination claims were precluded from court review pursuant to the RLA.

In <u>Odell v. Kalitta Air, LLC</u>, 107 F.4th 523, 532 (6th Cir. 2024), the plaintiff pilots elected not to vaccinate for COVID-19 and requested exemptions from their employer air carrier's mandatory vaccine requirement imposed during the global pandemic. <u>Id.</u> at 531. The plaintiff pilots proposed an accommodation of limiting their flying routes to countries that did not impose vaccine requirements. <u>Id.</u> The employer denied their requests for exemption and accommodations. <u>Id.</u>

The pilots sued their air carrier employer, asserting various claims including Title VII and ADA claims for failure-to-accommodate the unvaccinated pilots based on their religious beliefs and their alleged disabilities.

The district court ruled that the pilot's failure-to-accommodate claims were precluded from court review pursuant to the RLA. <u>Id.</u>

On appeal, the Sixth Circuit Court of Appeals affirmed. <u>Id.</u>

26

at 531-32.  The Appellate Court ruled that the plaintiff's
failure-to-accomodate claims required interpretations of the
existing collective bargaining agreement, specifically with
respect to seniority, bidding, and scheduling of the pilots'
routes.  Id.  The Sixth Circuit Court of Appeals ruled that the
courts lacked subject-matter jurisdiction over the pilots'
failure-to-accommodate claims and that such claims were precluded
from review pursuant to the RLA.  Id. at 531-32.

Here, Plaintiff requested that the Hawaiian Defendants allow
him to fly unvaccinated or only on specified routes.  He argues
that his requested accommodation would not violate the terms of
the CBA and would not have interfered with seniority or bidding
on the route to Sydney.

Plaintiff's failure-to-accommodate claims require
interpretation of the existing CBA with respect to seniority,
bidding, and scheduling.  The question of what accommodations
were available pursuant to the terms of the existing CBA in the
midst of the COVID-19 pandemic is precluded from court review
pursuant to the RLA.  Such claims require interpretation of
existing terms in the collective bargaining agreement before an
arbitrator.

Other District Courts have ruled that similar failure-to-
accommodate claims against transportation carriers in the context
of the COVID-19 pandemic are precluded from court review.  The

District Courts have found that plaintiffs' failure-to-accommodate claims implicate CBA provisions regarding scheduling, bidding, routes, and compensation.  Such claims require interpretation of collective bargaining agreements for which the courts lack subject-matter jurisdiction.  Whitford v. Nat'l R.R. Passenger Corp., 2024 WL 4216050, at *6 (W.D.N.Y. Sept. 17, 2024); Grindling v. Cathay Pacific Airways, Ltd., 2024 WL 4164234, at *3 (N.D. Ill. Sept. 11, 2024); see also Saliba v. American Airlines, Inc., 2022 WL 4131485, at *5 (D. Ariz. Sept. 12, 2022).

The Court agrees with the reasoning in Odell, 107 F.4th at 532, Whitford, 2024 WL 4216050, at *6 , and Grindling, 2024 WL 4164234, at *3.  Plaintiff's failure-to-accommodate claims are precluded and preempted from court review pursuant to the RLA.

**V.   Plaintiff's Request For Jurisdictional Discovery And For Leave To Amend The First Amended Complaint**

**A.   Jurisdictional Discovery Is Not Warranted**

In Plaintiff's Opposition, he requests jurisdictional discovery for the first time, despite the discovery deadline being closed.  (Pl.'s Opp. at p. 18, ECF No. 87; see Second Amended Rule 16 Scheduling Order, ECF No. 73).

Plaintiff has not established good cause to amend the scheduling order to allow for additional discovery.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992)

(explaining that good cause is required to amend the Rule 16 scheduling order).  Jurisdictional discovery is not warranted. Although the Court can evaluate evidence in a factual attack to subject-matter jurisdiction, the Court's evaluation is not one that requires the Court to resolve disputes concerning the interpretation of the existing Collective Bargaining Agreement. To the contrary, the Ninth Circuit Court of Appeals has explained that it is not for the courts to determine whether a claim actually violates a term of the collective bargaining agreement. The task of the Court is merely to determine if interpretation of the CBA is required to adjudicate Plaintiff's claim or whether a provision in a CBA arguably disposes of Plaintiff's claim. Schurke, 898 F.3d at 924.  It is not for the Court to decide if Plaintiff's requested accommodation was reasonable or if the Hawaiian Defendants would have faced undue hardship if they would have provided Plaintiff with his requested accommodation.

There is no basis for jurisdictional discovery as it would not alter the Court's finding that based on the allegations in the Complaint and the Court's review of the existing CBA, Plaintiff's failure-to-accommodate claims in Count I are precluded from Court review and must be heard pursuant to the dispute resolution terms in the RLA and the existing CBA.

**B.    Leave To Amend The Complaint Is Not Warranted**

In Plaintiff's Opposition, he also requests leave to amend the First Amended Complaint to add a claim for intentional discrimination.  (Pl.'s Opp. at p. 19, ECF No. 87).

Plaintiff's request for leave to amend the First Amended Complaint is untimely.  The original Complaint in this case was filed two and a half years ago on November 10, 2022.  The First Amended Complaint was filed nearly two years ago on June 16, 2023.  The deadline for seeking amendment to the Complaint closed more than a year ago on March 14, 2024.  (ECF No. 32).  The Rule 16 Scheduling Order has been altered numerous times and Plaintiff never sought to reopen the deadline to amend the Complaint.

Plaintiff characterizes Defendants' RLA Motion as "late" (Pl.'s Opp. at p. 18, ECF No. 87), but defenses based on lack of subject-matter jurisdiction, such as preclusion under the RLA, can be raised at any time and can never be waived or forfeited by the parties.  See Arbaugh, 546 U.S. at 514; Pearson, 659 F.Supp.2d at 1088 n.3.

Plaintiff has not established good cause required to amend the scheduling order to assert a new cause of action after more than two and a half years of litigation.  Johnson, 975 F.2d at 608 (explaining that a plaintiff must first establish good cause pursuant to Fed. R. Civ. P. 16(b) to amend the scheduling order prior to seeking amendment of a pleading pursuant to Fed. R. Civ.

P. 15(a)).

## VI.  Plaintiff's Remaining State Law Claim

A plaintiff has the burden of proving that subject-matter jurisdiction exists.  Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

Federal Rule of Civil Procedure 12(b)(1) requires that a case must be dismissed for lack of subject-matter jurisdiction when the Court lacks a constitutional or statutory basis to adjudicate the controversy.  Fed. R. Civ. P. 12(b)(1); Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 975 n.12 (9th Cir. 2012).

District Courts have a continuing duty to determine whether they have subject-matter jurisdiction.  Fed. R. Civ. P. 12(h)(3). The Ninth Circuit Court of Appeals has held that a court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action.  Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002) (per curiam).

### A.    Federal Question Jurisdiction

There are no remaining federal questions in the First Amended Complaint.  Count I, which asserted a claim pursuant to Title VII of the Civil Rights Act of 1964, is the only federal question presented in the First Amended Complaint.

**B.   Diversity Jurisdiction**

Diversity jurisdiction exists when there is complete
diversity of citizenship between the parties, and the amount in
controversy exceeds $75,000.  28 U.S.C. § 1332(a); <u>Caterpillar
Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996).

Plaintiff asserts that he "is, and was at all times relevant
herein" a citizen of the State of Hawaii.  (First Amended
Complaint at ¶ 3, ECF No. 30).

Defendants are also citizens of the State of Hawaii.  A
corporation incorporated in one State and having its principal
place of business in another is a citizen of both States.  <u>Bank
of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.</u>, 465 F.2d 489,
491-92 (9th Cir. 1972).

The First Amended Complaint alleges that the Defendants
Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc. are citizens
of both Delaware and Hawaii.  (First Amended Complaint at ¶¶ 4-5,
ECF No. 30).

There is not complete diversity between the Parties.  The
Court does not have subject-matter jurisdiction pursuant to
diversity.

C.  **The Court Declines To Exercise Supplemental
    Jurisdiction Over The Remaining State Law Cause Of
    Action**

Federal District Courts may have supplemental jurisdiction
over related state law claims in a case over which it has
original jurisdiction.  28 U.S.C. § 1367(a).  The district courts
may decline to exercise supplemental jurisdiction over a claim if
the district court has dismissed all claims over which it has
original jurisdiction.  28 U.S.C. § 1367(c)(3).

The Ninth Circuit Court of Appeals has ruled that "when
federal claims are dismissed before trial...pendent state claims
should also be dismissed." Religious Tech. Ctr. v. Wollersheim,
971 F.2d 364, 367-68 (9th Cir. 1992).

Here, the only remaining claim is Count II for Gross
Negligence pursuant to Hawaii state law.

The Court declines to exercise supplemental jurisdiction
over the remaining state law claim in Count II for Gross
Negligence. Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th
Cir. 2010); James v. City & Cnty of Honolulu, 125 F.Supp.3d 1080,
1098 (D. Haw. 2015) (declining supplemental jurisdiction over
remaining state law claims considering factors of judicial
economy, convenience, fairness, and comity).

Count II for Gross Negligence in the First Amended Complaint
(ECF No. 30) is **DISMISSED.**

## CONCLUSION

Defendants' Motion for Partial Dismissal for Lack of Subject-Matter Jurisdiction (ECF No. 82) is **GRANTED.**

Plaintiff's request for jurisdictional discovery is **DENIED.**

Plaintiff's request for leave to amend the June 16, 2023 First Amended Complaint is **DENIED.**

Count I in the First Amended Complaint (ECF No. 30) is **DISMISSED WITH PREJUDICE.**

Count II in the First Amended Complaint (ECF No. 30) is **DISMISSED.**

The Clerk of Court is **ORDERED** to enter Judgment in favor of Defendants and to **CLOSE THE CASE.**

IT IS SO ORDERED.

DATED: June 5, 2025, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Noah I.M. Schenk vs. Hawaiian Airlines, Inc.; Hawaiian Holdings, Inc., 22-cv-00483 HG-WRP; **ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION (ECF No. 82) AND DECLINING SUPPLEMENTAL JURISDICTION OVER REMAINING STATE LAW CAUSE OF ACTION AND DISMISSING THE CASE**